# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

### 1:25-cv-00282-EPG(PC)

Docket No.: 1:25 mc 0018 SAB

Jamie Osuna, CDCR #BD0868
CSP-COR
P.O. Box 3476
Corcoran, CA 93212
    Pl.,

                against

A. Luviano, C. Cormier, E.
Moreno, M. Hernandez, A.
Ferrel, J. Romero, Cpt. Espinoza,
J. Barrios, Craig, Lopez, A.
Guillen, J. Weber, J. Burnes, D.
Burns, J. Hernandez, S. Weaver,
A. Encinas, D. Berlanga, A.
Gonzales, K. Field, et al,
    Defs.

**DEMAND FOR JURY TRIAL**

**COMPLAINT FOR DECLARATORY, FURTHER AND INJUNCTIVE RELIEF, COMPENSATORY AND PUNITIVE DAMAGES**

Brought under 42 U.S.C. § 1983 (civil rights action) for violations of the U.S. Constitution.

ORIGINAL
FILED
FEB 24 2025

**STATE SUPPLEMENT**

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ CLERK

## A. JURISDICTION & VENUE

1. This is a civil rights action arising under 42 U.S.C. § 1983 to redress the deprivation under the color of state law of rights, privileges, and immunities guaranteed by the U. S. Constitution, secured by Acts of Congress, providing for equal rights of persons within the jurisdiction of the U.S. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 & § 1343 (a)(3). This Court has jurisdiction over Pl.'s action and is empowered to grant injunctive relief pursuant to Fed. R. Civ. P. 65, is empowered to grant declaratory relief under 28 U.S.C. § 2201, further relief under 28 U.S.C. § 2022, and may exercise supplemental jurisdiction under 28 U.S.C. § 1367.

2. Venue is proper in this judicial district, the Eastern District of California, Fresno Division, pursuant to 28 U.S.C. § 1391 (a)(b) because a substantial part of the events and actions and omissions giving rise to Pl.'s claims occurred at CSP-COR (California Department of Corrections (CDCR)), in Corcoran, CA, Kings County, which is within this judicial district.

## B. INTRODUCTION

3. This is a § 1983 civil rights action brought by Jamie Osuna, a state prisoner, for declaratory, further and injunctive relief, compensatory and punitive damages under 42 U.S.C. § 1983,

*OSUNA V. A. LUVIANO, ET AL*

alleging retaliation, violations of the federal court orders arising from the actions <u>Armstrong v. Newsom, et el</u>, *Five Prisons Remedial Plan*, ADA policy; <u>Coleman v. Newsom, et al</u>; the <u>Todd Ashker Settlement</u> agreement.

4. Since arriving at CSP-COR, Pl. alleges he has been subjected to retaliation for accessing the courts. Defs. who were/are Defs. in Pl.'s civil actions and other matters, and Pl.'s criminal case, continue to infringe on Pl.'s protected conduct of accessing courts. Defs. continue to threaten, harass with threats, issue false disciplinary charges (that were later dismissed after officers were found dishonest in their incident reports), inter alia, in alleged retaliation for Pl. accessing the courts. Defs. continue to interfere in Pl.'s complaints/grievances/litigation via the consistent pattern of destroying evidence, and subjecting Pl. to the same retaliatory actions when Pl. files a complaint against them. These same Defs. have continued a pattern of cell searches with confiscation, destruction of essential, crucial legal documents, withholding DMEs, and ordering, issuing false Rules Violations Reports (RVRs), infringing on and violating Pl.'s First Amdt. rights guaranteed under the U.S. Constitution, and other constitutional rights and laws.

5. Due to Pl.'s intellectual hardship of being under continual PC 2602 orders, schizophrenia-type mental illnesses, SHU/RHU housing, alleged retaliation, Pl. received help with the transcribing/writing of this complaint.

## C. PARTIES

6. Pl. Jamie Osuna is a pro-se state prisoner incarcerated at CSP-COR, Corcoran, CA.

7. Def. A. (Asuncion J.) Luviano(-Martinez), a Sgt., is being sued in his individual, official capacities. PERN # 123272.

8. Def. E. (Enrique) Moreno is a Lt. and is and is being sued in his individual, official capacities.

9. Def. M. (Marco) Hernandez, IGI/ISU Officer, is being sued in his individual, official capacities.

10. Def. A. (Armando) Ferrel is a 4A unit CO and is being sued in his individual, official capacities.

11. Def. J. Romero is a 4A unit CO and is being sued in his individual, official capacities.

12. Def. Espinoza is a Cpt. and is being sued in his individual, official capacities.

13. Def. J. Barrios is a Lt. and is being sued in his individual, official capacities. PERN # 91465.

14. Def. Craig is a property officer and is being sued in his individual, official capacities.

1  15. Def. Lopez is a property officer and is being sued in his individual, official capacities.

2  16. Def. A. (Arthur) Guillen was Appeals Coordinator, and is being sued in his individual, official

3      capacities. Def. is now CSP-COR's Chief Deputy Warden.

4  17. Def. J. (Jason) Weber, Appeals Coordinator, is being sued in his individual, official capacities.

5  18. Def. J. (Joseph) Burnes is an R&R Sgt. and is being sued his individual, official capacities.

6      PERN # 18566; badge # 69436.

7  19. Def. D. (Daniel) Burns, R&R Cpt., is being sued in his individual and official capacities.

8  20. Def. J. Hernandez is an R&R officer and is being sued in his individual and official capacities.

9  21. Def. S. Weaver is a property officer and is being sued in his individual and official capacities.

10  22. Def. A. (Arturo) Encinas, Sgt., is being sued in his individual, official capacities. PERN #17963.

11  23. Def. C. (Collen) Cormier, Law Librarian, is being sued in her individual, official capacities.

12  24. Def. D. Berlanga, litigation coordinator fill-in, is being sued in his individual, official capacities.

13  25. Def. A. Gonzales is a hearing officer and is being sued in his individual and official capacities.

14  26. K. (Kristin) Field, program admin. advisor, is being sued in her individual, official capacities.

15  27. Def. John/Jane Does, CDCR employees, are sued in their individual, official capacities.

16              **D.  PREVIOUS 42 U.S.C. § 1983**

17  28. Asuna v. Brown, et al; 1:19-cv-00554-EPG; Status: failure to prosecute (dismissed without

18      prejudice.)

19  29. Osuna v. Burnes, et al; 1:24-cv-00793-KES-SAB; Status: pending.

20  30. Osuna v. Guerrero, et al; 1:24-cv-01009-KES-SAB; Status: pending.

21  31. Osuna v. Campbell, et al; 1:24-cv-01156-JLT-EPG; Status: pending.

22              **E.  EXHAUSTION OF ADMINISTRATIVE REMEDIES**

23  32. Department of California Corrections and Rehabilitation (CDCR) grievance log # 603728 was

24      **GRANTED.** Pl. has exhausted his administrative remedies with respect to all claims and all

25      Defs. Pl. filed a CA Government Claim notice within 6 months and was issued a right-to-sue

26      letter. All notices for a CA state claim have been completed.

27              **F.  FACTUAL STATEMENT**

28  33. On or around 07/16/2024 - 07/18/2024, Pl. filed a grievance on Def. A. Luviano for telling

1    inmates that Pl. is a rapist and for Def. A. Luviano telling inmates that Pl.'s lawsuit "wouldn't

2    get anywhere." Pl. does not have any sex crimes/charges, and these are not Pl.'s case factors.

3    34. Around 07/28/2024, Pl. filed a grievance on Def. A. Luviano and turned it in. Pl. did not receive

4    a claimant acknowledgment. Pl. was informed that the grievance was never received. Pl. filed

5    another grievance and still did not receive a response. Def. A. Ferrel and Def. A. Luviano

6    expressed their dislike for filing grievances.

7    35. 2-5er inmates brought to Pl.'s attention Def. A. Luviano told A-section inmates who allegedly

8    work for Def. that Pl. was a rapist. These inmates informed inmates in Pl.'s C section. An older

9    Blood inmate in cell # 46 C Section told Pl. at yard Def. Sgt. Luviano approached the Blood

10    inmate and was talking bad stuff about his homie that could get him attacked. Pl. was at yard

11    with all three inmates. In or around 06/2024, Pl. was informed by a Blood inmate who was in

12    Salinas Valley State Prison with Def. A. Luviano, that Def. A. Luviano would search inmates'

13    cells, find contraband or destroy property and then tell STG gang members that it was the other

14    inmates' fault that Def. A. Luviano had done this. The Sureños gang members caught on to what

15    Def. A. Luviano was doing—making targets out of each of the inmates, gladiator set-ups, etc.

16    The inmates then rushed to attack Def. A. Luviano over this. Def. A. Luviano had run from the

17    attack. Def. A. Luviano's correctional officer partner got jumped on. Def. A. Luviano told Pl.

18    that because of Def. A. Luviano, this correctional officer partner "got it bad."

19    36. In Pl.'s grievance, Pl. addressed Def. A. Luviano conducting the same unlawful sets-ups as

20    above described at CSP-COR in RHU with mental health/*Coleman* inmates and other inmates.

21    37. On or around the end of 07/2024, Pl. was informed that Pl. was receiving a RVR (a write up) that

22    was later dismissed. Pl. at that time stated to CO Gonzales, "I was told I wasn't receiving an

23    RVR, so I refused a 7219 [CDCR injury/incident form.] Then I need to do one now," for self-

24    injury cuts on Pl.'s arm. Pl. showed CO Gonzales Pl.'s arm. CO Gonzles saw that these cuts

25    were bleeding and CO Gonzles stated he would call a RN and pull Pl. out of his cell.

26    38. An RN approached Pl.'s cell, asked to see Pl.'s arm. Pl. showed his arm. The RN asked Pl.,

27    "When did it happen?" Pl. stated, "On and off from the sixteenth of last month going on to this

28    month." Pl. was pulled out, escorted to the 4A rotunda in his boxers and T-shirt. Def. A. Luviano

*OSUNA V. LUVIANO, ET AL*

1    told the RN that the cut marks on Pl.'s arm looked fresh and that Pl. should be in suicide watch.

2    39. Pl. was left in a cage. The RN looked at Pl.'s arm, saw active bleeding. Pl., being a cutter/having

3    a cutting addiction, being diagnosed with severe mental illnesses, under PC 2602 orders,

4    attempted to go back to Pl.'s cell. Pl. told the RN that Pl. was self-injuring before and recently,

5    but that Pl. would hold back on such self-injuries.

6    40. The RN told the CO the RN was clearing Pl. to return to Pl.'s cell. Def. A. Luviano stepped in

7    and stated, "Shouldn't [Pl.] be going to TTA and be examined? It's after 4 [pm]—shouldn't [Pl.]

8    go to suicide watch?" The RN stated, "No, I'm clearing him." Pl. told Luviano to stop interfering

9    with Medical's decision.

10   41. After Def. A. Luviano left, the RN stated the RN wanted to send Pl. back to Pl.'s cell but Def. A.

11   Luviano made it so that Pl. had to get cleared at TTA. Pl. was then escorted to TTA and cleared.

12   Pl. was escorted back to his cell. Def. A. Luviano approached Pl.'s cell. Def. A. Luviano wanted

13   Pl. to get handcuffed, pulled out to talk to Def. Pl. refused and told Def. A. Luviano, "I have

14   PREA allegations against you. Can you please send another sergeant and stay away from me?"

15   42. A unit CO then pulled up a chair and book in front of Pl.'s cell. Pl asked the unit CO, "Why are

16   you there?" The unit CO stated to Pl., "Because [Def.] Luviano wants me to watch you." Def. A.

17   Luviano then approached Pl.'s cell again and stated to Pl, "Because of your self-injury and you

18   not being cleared the proper way, my officer is going to sit here and watch you all night. Don't

19   put up the window cover, please. Let the CO see you. You should be in Suicide Watch for

20   harming yourself." Def. A. Luviano then walked away. Pl. asked CO Gonzales, "So, are they

21   going to leave me in here with the cutting instrument that I've been self-harming with?" CO

22   Gonzales stated to Pl., "I don't know, man. It's on [Def.] Luviano." Unit COs sat on Pl.

23   overnight until the morning.

24   43. 08/02/2024, Clinician C. Angel arrived to evaluate Pl. Pl., at his cell door, requested another

25   clinician to evaluate him due to C. Angel being named in a civil lawsuit/grievances and Pl.'s

26   medical/mental health issues not being addressed, and it would be biased. The COs stated that

27   this was just who they sent. C. Angel had stated that "she's just the one that's here right now."

28   44. 08/02/2024, at visiting, an inmate informed Pl. that Def. A. Luviano and other staff were "tearing

1    up [Pl.'s] cell and came out with a lot of stuff," Pl.'s legal books/papers, etc.

2    45. As Pl. went back to his cell, Pl. saw Defs. J. Barrios and E. Moreno leaving the area. Pl. found

3        that his cell had been ransacked, and a lot of property had been destroyed and or removed—even

4        Pl.'s TV connector, wash rags, and more. Pl. found that there was no cell search receipt, and all

5        of Pl.'s legal books had been taken, and some legal work.

6    46. Pl.'s neighbor Kevin Camp told Pl. he had seen everything/wrote down for Pl. all names he had

7        seen. Kevin Camp gave Pl. a kite with times Defs. E. Moreno, J. Barrios were at the rotunda

8        window observing the cell search, and J. Romero, and A. Luviano left Pl.'s cell with bags:

9    47. On or around 08/02/2024, (while Pl. was away from his cell), around 4:06 pm, Def. M.

10       Hernandez (Institutional Gang Investigator (IGI) Officer) entered Pl.'s cell. Around 5:19 pm,

11       Def. M. Hernandez exited Pl.'s cell. Between around 4:18 – 4:20 pm, Def. A. Luviano entered

12       Pl.'s cell. Def. J. Romero (4A unit officer) had brought red spray paint and bags. Around 4:40

13       pm, Def. J. Barrios and Def. E. Moreno (Lt. from/for another section of the prison—not unit 4A)

14       arrived to supervise. Def. A. Ferrel (4A unit officer) was also handling Pl.'s property. Around

15       4:55 pm, several staff left. Around 5:00 pm, Def. J. Romero took carts of Pl.'s property to the

16       hallway. Around 5:08 pm, Def. A. Luviano exited Pl.'s cell. Around 5:11 pm, Def. A. Luviano

17       returned to Pl.'s cell. Def. E. Moreno returned to the front of 4A-1L together with Defs. M.

18       Hernandez, A. Ferrel, A. Luviano. Def. A. Luviano had exited Pl.'s cell with a filled bag.

19   48. Around 5:19 pm, Pl. returned to his cell. Staff had not provided Pl. with a cell search receipt at

20       that time. Pl. at that time noticed all his legal books and some legal paperwork (stored between

21       the pages of his books) for his civil case 1:24-cv-00793-SAB Osuna v. Burnes, et al, (which

22       litigation includes Def. E. Moreno, and A. Encinas) and criminal cases, internal complaints, inter

23       alia, were now gone/missing. This includes evidence for Pl.'s complaints against Defs. A.

24       Luviano and E. Moreno, and stored cumulative, crucial, essential evidence related to Pl.'s

25       pending civil and criminal cases.

26   49. Pl. noticed at least half of the evidence/paperwork Pl. had been saving for the FBI, his lawyer,

27       and to present in his criminal cases/civil litigations was now missing. Pl. noticed the contents of

28       all his soft plastic, clear containers (e.g., for hair oil, conditioner, personal hygiene products,

1    coffee) had been emptied from their containers and left in Ziplock bags.

2    50. Pl. stated to Def. M. Hernandez, "What the fuck, you guys destroyed all my stuff. Where's all my

3    legal stuff?" Def. M. Hernandez stated Pl. would have to talk to Def. A. Luviano.

4    51. Pl. called CO Gonzales to his cell side to request Def. A. Luviano come speak with Pl. Pl.

5    showed COs Cruz and Gonzales the current RHU property matrix for privilege group AS-5 (Pl.'s

6    privilege group.) Pl. explained that the current RHU property matrix and Cal. Code Regs. Tit. 15

7    does not have a limit on quantity of legal materials, only that the property is to be within 6 cubic

8    feet, with an additional cubic foot allotted to inmates with open cases. CO Gonzales stated CO

9    Gonzales would talk to Def. A. Luviano.

10    52. Pl. noticed his inhaler was also gone. Pl. asked COs for Pl.'s inhaler. A CO stated he would get

11    Pl. after the CO's checks/rounds. The CO never came back. Pl. stopped another CO to ask about

12    Pl.'s confiscated inhaler. The CO said that it was "on [Def. A.] Luviano," that Def. A. Luviano

13    didn't want Pl. to get pulled out. Pl. told a CO, "You guys just don't want this [the cell

14    search/confiscation] documented," and the CO replied that it was above his pay grade. Pl. stated

15    that his inhaler was his DME. Pl. that same day had asthma issues/attack and Pl. got a brown

16    lunch bag and began breathing exercises. Later the next day, a CO brought Pl. an inhaler.

17    53. Pl. had stated to CO Gonzales, and Def. Luviano himself, and in his complaint, "How come you

18    guys didn't use another sgt.? Why Luviano, Moreno, Ferrel who I just filed a complaint on?" CO

19    Gonzales stated, "I don't know, it's above my pay grade." And Pl. stated to Defs. A. Luviano

20    and A. Ferrel that it was inappropriate. Pl. was told he "shouldn't be filing 602s [grievances]."

21    54. Def. A. Luviano approached Pl.'s cell. Pl. stated to Def., "What the fuck happened to all my shit,

22    man? Where's my legal books?" Def. stated, "Look, man, calm down. We'll talk about it when

23    you calm down." Pl. stated, "You can't confiscate my legal books. There's no policy on limit on

24    legal books as long as it's within the 6 cubic feet and I have an extra cubic foot for open cases."

25    Def. stated to Pl., "I'll pull you out later and we'll talk about. it" Pl. asked, "Am I receiving a

26    write-up? You didn't even find anything." Def. stated, "No, you're not receiving a write up." Pl.

27    later received a lock-up order.

28    55. Def. A. Luviano told Pl. clinician C. Angel said Pl. had a window covering up overnight, that

was "why I searched your cell." Def. instead stated he searched Pl.'s cell because other inmates stated Pl.'s cell never gets searched. Def. instead stated that an inmate stated Pl. had "something" in Pl.'s cell as the reason for the search. Pl. stated to Def. Luviano, "You gave me three different reasons on why you searched my cell." On Pl.'s lock-up order/documentation, Def. A. Luviano instead stated that Def. searched Pl.'s cell for a "random cell search."

56. Pl. asked Def. A. Luviano, "Where's my cell search receipt?" Def. stated, "We're working on it." Pl. stated that "policy states you have to do a 1083 Property Inventory Sheet ("1083") listing everything that you take from me." Pl. stated, "You know it was wrong to come in here—you personally and Def. M. Hernandez since he's IGI and I have complaints on you guys." Def. A. Luviano stated, "I know," and that he had Pl.'s books "in my office. I'll pull you out tomorrow and we'll go through everything."

57. Pl. asked for a cell search receipt and didn't receive a cell search receipt until around 9 pm. The cell search receipt, signed by Defs. A. Ferrel and A. Luviano, notated confiscation of 1.) Blanket 2.) Sheet 3.) Excess clothing 4.) Containers 5.) Trash 6.) Books. Pl. was informed that he would be allowed to choose/keep some allowable items.

58. Later that evening, CO Gonzales asked Pl. to sign one side of the 1083 and cell search receipt. Pl. asked CO Gonzales, "Where's all the property you guys destroyed and that's not in my cell? You only have some of my books listed. I'm not gonna sign this unless you bring all the stuff you confiscated." CO Gonzales responded, "Let me go ask [Def. A.] Luviano." CO Gonzales returned and told Pl., "[Def. A.] Luviano didn't want to do it. Just sign this." Pl. stated, "No, I'm not agreeing to that this is all that I had."

59. Pl. filed three separate grievances on this issue. One grievance of staff misconduct was not properly classified as staff misconduct and the full BWC footage was not saved. Staff refused to show Pl. more than 30 seconds of body worn camera footage from the cell search. Pl. informed these staff this was in violation of rulings in the class action Armstrong v. Newsom, et al [4:94-cv-02307-CW; Document 3392-2; Filed 03/21/22.]

60. On or around 8/3/2014, Pl. was informed by a CO that Def. J/J. Does (correctional officers/staff) were going through Pl.'s stuff that Def. A. Luviano had put in Def. A. Luviano's office.

61. The next day, in the late afternoon, around 5-6 pm, Pl. was pulled out to the 4A rotunda where Def. A. Luviano had two carts of only Pl's books, no other items. Pl. asked Def., "Where's all my legal paperwork, evidence documents?" Def. responded, "We're only going to deal with this right now. I'm going to let you choose 5 legal books and 10 regular books," Pl. informed Def./showed him the Todd Ashker case settlement and the property matrices for Pl.'s division A5-1S, RHU, ASU SHU. Pl. showed Defs. A. Luviano, J. Romero, and Sgt. Beer, others there is no quantity limit for legal books.

62. Def. A. Luviano stated to Pl., "For now, I'm only going to let you have 5 books. If [Def. Cpt. Espinoza] wants to overlook it, so be it; you'll get them back." Pl. asked Def. A. Luviano, "Have you guys searched these books? I had bunch of legal papers between pages of legal books." Def. replied, "No" Pl. stated to Def., "You're contradicting yourself—if you found a weapon yesterday, aren't you supposed to search my property for other contraband? You're just saying that because I'm noticing the legal evidence documents I had between books' pages are gone."

63. Def. A. Luviano stated, "Well, we didn't search this stuff." Pl. stated, "Where did you have all my stuff at?" Def. replied, "In my locker." Pl. stated, "You should have properly stored my legal stuff." Pl. informed Def. that a CO told Pl. the books could not fit in Def. A. Luviano's locker and were left in Def. A. Luviano's office/hallway. Pl. stated, "Anybody had access to my stuff. You didn't properly secure and store my legal documents, papers marked confidential from my civil and criminal cases." Def. told Pl. to "602 it."

64. Def. A. Luviano brought up his criminology degree and informed Pl. that he had looked up the prices of Pl.'s books on a search engine. Def. bragged later how the cell search had been "a good haul." Def. A. Luviano had informed Pl. that Def. A. Luviano thought Pl. belonged in CDCR's RCGP program (i.e. not Pl.'s current housing.) Pl. asked Def. A. Luviano, "Are you supervisors [Def. Cpt. Espinoza and Lt. A. Gonzales] aware of this [the cell search and legal book/materials confiscation]?" And Def. A. Luviano stated, "Yeah, they're aware of it," that they agreed with it, and that Def. A. Luviano was going to send Pl.'s property to Def. Cpt. Espinoza to see what Def. Cpt. Espinoza decides.

65. Def. A. Luviano showed Pl. at least 15-20 pages of all policies and warden Tammy Campbell's

*OSUNA V. LUVIANO, ET AL*

1    memos, CSP-COR's OP that Def. A. Luviano was using against Pl. Def. showed Pl. the

2    Warden's memo regarding containers, which was that if such containers were see-thru/clear

3    plastic it was allowed. Pl. stated, "Why did you guys confiscate allowable containers and put

4    some of the contents in zip bags and disallowed them?" Def. A. Luviano stated, "Oh, we did?

5    Just 602 it and we'll address it."

6  66. Def. A. Luviano was referencing the SHU property matrix. Pl. asked to see the matrix and

7    pointed out that Def. A. Luviano was not referencing the section that covered legal

8    books/materials for RHU AS-5 inmates. Pl. showed Def. A. Luviano the current RHU matrix for

9    AS-5 inmates where there is no quantity limit on legal materials. The category covers books,

10   pamphlets, references, and more. Pl. showed Def. A. Luviano where to look to confirm for legal

11   books/materials. Def. A. Luviano looked and Def. stated Def. didn't know how many this matrix

12   allowance meant for legal books/materials. Pl. then showed and informed Def. A. Luviano per

13   the matrix there is **no quantity limit**.  Pl. stated to Def. A. Luviano and CO Gonzales that

14   "They're supposed to train you guys in how to deal with Ashker guys who are DRB." Pl. was

15   told that "they didn't tell us anything." CO Rangel had stated to Pl., "Yeah, they did provide

16   them with a packet but it's a lot to read."

17 67. Pl. informed the Court that his crucial, essential documents to his cases and legal books were

18   taken. The Court gave an injunction order with a deadline to respond. After the incident, Pl. tried

19   going to the law library to access legal references. Defs. A. Luviano, A. Ferrel, J. Romero

20   threatened Pl., telling other COs he could have been in the cell locker and taken more stuff. Pl.

21   told Def. A. Luviano that you "can't trade one constitutional right for another." Pl. was unable to

22   access the law library. In or around the first week of August, Defs. A. Ferrel and A. Luviano

23   threatened Pl. that if Pl. were to shower or visits that what happened last time could have been

24   worse, that Def. A. Luviano could have stayed in there longer and that will him the right to

25   search it again.

26 68. Upon receiving the incident documents, Pl. noticed a lot of individuals involved were named in

27   Pl.'s civil and criminal cases. Def. A. Encinas was the on-duty sgt. and one of the sgts. to the

28   incident and had access to Pl.'s confiscated legal materials/evidence.

1    69. On or around 08/18/24, Pl. filed a grievance regarding Pl. not receiving the legal books, etc. Def.

2    J. Weber granted the grievance/granted that Pl. was to have 10 legal books returned to him and to

3    dispose of the remainder. Pl. challenged this because policy states that there is no limit on the

4    quantity of legal books. Defs. M. Hernandez and A. Luviano had stated that the bottles they

5    confiscated were hard; that Pl.'s stuff had been given to Property. One of Pl.'s grievances for the

6    above incidences above was granted by CDCR headquarters Sacramento Appeals, stating that

7    CSP-COR failed to do a 1083 documentation of property that Defs. had taken. It was ordered that

8    CSP-COR look at the merits of the case.

9    70. Since Pl. could not access e-filing, Pl. made copies of his complaint and turned it in via

10    institutional mail with a request to the litigating law librarian if she/he can process it, e-file it.

11    71. It was brought to Pl.'s attention that these documents were confiscated and destroyed; the

12    documents were not e-filed, not returned to Pl.

13    72. Pl. sent a notice to Def. K. Field requesting Def. to please train staff regarding training on

14    housing. Def. had refused to talk to Pl., and refused to provide clarity to Pl., others.

15    73. Around the beginning of 09/2024, the inmate in cell #56 approached Def. J. Romero and asked

16    Def. to pass item to Pl. Def. stated, "No." The inmate had then seen Def. passing for another

17    inmate. The inmate asked Def., "Why didn't you pass for [Pl.]?" Def. stated, "Because [Pl.]

18    wrote a grievance on me."

19    74. After the inmate told Pl. the next day, Pl. stated to Def. J. Romero, "What do you expect? You

20    guys just threw my stuff away and didn't even document it. I'm missing evidence to my civil

21    case and evidence that I get from other inmates for my attorney that I can't replace." Pl. grabbed

22    two bottles and stated, "You see these two bottles? I just ordered them from a package. The

23    Property Officer said I'm allowed them, and these are the same ones you guys confiscated and

24    then [Defs.] M. Hernandez and Luviano lied in the 602 saying they were hard plastic. I have the

25    same order numbers to show they're the same items." Pl. approached Def. A. Ferrel and

26    expressed the same thing, and Def. A. Ferrel stated, "You have to talk with Luviano about all

27    this."

28    75. Around mid-08/2024 property officer Def. Craig appeached Pl.'s cell with a paper and asked Pl.

1    what did Pl. want to do with Pl.'s confiscated/removed property—donate it, throw it out, send it

2    home? Pl. stated, "I'm allowed to have unlimited number of legal books. I have a lot. I want you

3    to bring all my books to me." Def. Craig stated, "I'm off this week, but I'll be back next week."

4    76. Around 08/14/24, Pl. informed unit Sgt. Kairis Pl. wanted to see all his books/what he was

5    sending out. Sgt. Kairis stated he would notify property officer Def. Lopez. When Def. Lopez

6    approached around 08/21/2024, Def. confirmed that Def. received a call from Sgt. Kairis but had

7    told him Def. was already handling it with Pl. Pl. told Defs. Craig and Lopez, "I have a right to

8    choose my legal books and to see what I'm sending out." Pl. was told, "Then you need to get on

9    R&R about that." R&R is where Defs. J. Burnes, D. Burns, J. Hernandez are posted—against

10   whom Pl. had filed grievances/oral complaints/litigation. Defs. Lopez, Craig did not have any

11   nonallowables. Defs. stated Def. A. Luviano had not sent them any nonallowable property.

12   77. After Pl. exhausted his grievance remedies, Pl. over the course of months sent the Law Library

13   over ten requests to have an appointment with the Law Library. Pl. requested to do research,

14   make copies, and e-file a complaint of conditions of confinement with the Eastern District. Pl.

15   received no response. On the Law Library day for Pl.'s building, Pl. talked with unit COs, asking

16   the COs to contact Def. C. Cormier (Law Librarian) to tell her Pl.'s request was urgent, that Pl.

17   needed to e-file documents, and there was a standing order, "the courts won't accept my claim if

18   you don't e-file." The CO returned and stated to Pl., "They don't want to deal with you, but

19   we're trying." Pl. sent a request to Def. Cpt. Espinosa, informing Def. what happened and the

20   standing court order, and how the litigation/litigating library has to allow Pl. to e-file, and how

21   Pl. had been trying for months to make an appointment, and he was not allowed to go. Def.

22   stated, "Well it looks like they're not going to let you in. File 602."

23   78. Since Pl. could not e-file, Pl. sent the complaint to the Court, and it was rejected by the Clerk of

24   the Court on the grounds that it must be e-filed through CSP-COR. Pl. then made a copy of the

25   Clerk's notice and sent it to the Law Library coordinator. For around two weeks, Pl.'s request

26   was again denied. Pl.'s complaint and documents was sent to the Court before he tried to have e-

27   filed was lost. For around 6-7 months, Pl. has not been allowed access to the Law Library.

28   79. Pl. then filed out a priority slip for the Law Library and listed his civil complaints. Pl.'s request

1    was denied on stated grounds that Pl. had an attorney for Pl.'s (criminal) case. Pl. informed them

2    that Pl. does not have a civil attorney, and what does that (his criminal attorney) have to do with

3    anything. Pl.'s request was denied. Pl.'s request to e-file was denied. Pl. again requested for a

4    Law Library appointment. Pl.'s request was ignored and they suggested Pl. go through the Trust

5    Account Office. Pl. did so. Pl. was again denied. Through 2024, Pl. has been to the Law Library

6    only around one (1) time.

7    80. On or around 08/21/24, property officers Defs. Craig and Lopez approached Pl's cell with books.

8    Pl. had stood by his cell door with a folder of the RHU matrix, old and new, for ASU SHU

9    inmates, privilege group D. Pl. also showed Def. Craig a stack of Pl.'s book receipts. The 1083

10    Inmate Property Inventory Form showed Defs. A. Luviano and Cpt. Espinoza had not sent the

11    property officers any legal property or nonallowables—only regular books.Pl. noticed a lot of his

12    legal books were missing. Pl. stated to Defs. Craig and Lopez, "How come you didn't bring me

13    all the books so I can pick them out myself and see what's being sent home?" Pl. was told that

14    "this was how they do it," and that this was what was "sent to them by [Defs.] Cpt. Espinosa and

15    A. Luviano," that "I'm giving you what they gave me." Pl. received some of his books and Def.

16    said he would be back later for Pl. to fill out an address form to send out the books he was not

17    allowed to keep. Pl. asked Def. Craig, "Is this all you have is books? And Def. replied, "Yes,

18    that's all I have is books." Pl. asked Def. Lopez, "So, they didn't give you any other legal papers,

19    nonallowables?" Pl. was told, "No."

20    81. Pl. provided a mailing address, as well as signed a trust withdrawal to send out items he was not

21    allowed to keep. Def. Lopez later, in or around late 09/2024, while Pl. was in the 4A-1L rotunda,

22    showed Pl. the property slip/form. Def. Lopez stated that for some reason Def. Craig had "never

23    sent the stuff out." Pl. noticed that books and comic books had been added *after* Pl. had signed

24    that inventory property form. There were still no nonallowables listed. Pl. then stated, "They're

25    saying they gave you other stuff." Def. Lopez denied Property had been sent other items.

26    82. Pl. in or around mid-08/2024 stated to Def. A. Luviano, "You know the RVRs are bullshit." Def.

27    A. Luviano stated, "We'll see at the RVR hearing if it's bullshit," and that, "If you keep doing

28    what you're doing, then we're gonna keep doing what we're doing." Pl. stated, "My neighbor

1    told me that you said my civil case wasn't going to go nowhere. Is this what you mean by not

2    going nowhere?" Def. replied, "Maybe. What do you think?"

3    83. Def. A. Luviano had stated to COs, inmates, Pl., that they know Pl. cares about his visits and

4    they're going after those next–just like they did his books.

5    84. Def. A. Ferrel stated to Pl., "I just had the weapon. I didn't search your cell." Upon receiving the

6    incident report, Pl. noticed Def. A. Ferrel instead stated he had seen a string jammed between

7    legal paperwork, pulled it out thinking it to be a weapon, asked for a container and put the

8    container in his pocket, continued the cell search. Pl. was only allowed to review under 30

9    seconds of the Body Worn Camera (BWC) footage from the cell search incident. It showed Def.

10    A. Ferrel bending over, picking up something small off the cement in front of a stack of books.

11    85. Pl. informed supervisors/staff and asked, "Why doesn't [Def. A. Ferrel's] report match the

12    BWC?" The purported weapon was not retained/saved. Pl. was told everything was thrown away,

13    that Defs. had dug through the trash and "couldn't find it." There were no time, dates, CO names

14    on pictures of the purported weapon which Pl. stated was departing from policy.

15    86. Pl. was not allowed to challenge his RVRs via use of witness statements, grievance, or in any

16    manner otherwise allowed under State of California law.

17    87. Around 10/2024, Pl. filed a CA government claim pursuant to CA GOV §§ 905 AND 910, et

18    seq. on the cell search with legal properties confiscation/destruction herein described.

19    88. On 12/03/2024, the CA Government Claims Office responded to Pl., "The Government Claims

20    Program was unable to act on the claim within the timeframe prescribed by law. Therefore, the

21    claim was deemed rejected pursuant to Government Code section 912.4."

22    89. 12/11/2024, CSP-COR forwarded the RVR against Pl. arising from the cell search. Kings County

23    District Attorney's Office filed it as 24CM3734 for "possession of a weapon."

24                                  **G. CLAIMS FOR RELIEF**

25                          **1ST AMDT. TO THE U.S. CONSTITUTION**

26                              **CLAIM ONE: RETALIATION**

27    90. Def. A. Luviano's actions, in retaliating against Pl. for and right after Pl. exercised Pl.'s

28    protected conduct of filing grievances/voicing oral complaints against Def. (for interfering with

                                    14                    *OSUNA V. LUVIANO, ET AL*

1    Pl.'s court access and retaliatory conduct), were retaliatory adverse conduct/actions against Pl.

2    conducted within a few days after Pl. filed grievances/voiced oral complaints against Def. Def.

3    searched Pl.'s cell, departed from normal procedure, destroyed/confiscated crucial, essential

4    evidence documents/references for Pl.'s pending civil, criminal cases, other litigation, which Pl.

5    can never recover such evidence again. Def. withheld Pl.'s legal books until Pl. ran out of time to

6    respond to a court order deadline, and this after Pl. was threatened if Pl. accessed the law library

7    that the rest of Pl.'s property would be destroyed, that it could get worse if Pl. continued fighting

8    his cases with further cell searches and RVRs/disciplinary charges. As a result of Def.'s actions,

9    Pl. suffered damage in the form of a First Amdt. infringement that shocked/chilled Pl. from

10    accessing the courts, Pl. isolating himself to his cell, not coming out to shower or recreation yard,

11    law library, visits during Def.'s shifts. Pl. missed researching/replying by the court order

12    deadline for his civil case. Def.'s actions constituted retaliation and violated Pl.'s First Amdt.

13    rights, and **federal court orders arising from <u>Coleman v. Newsom, et al</u>; <u>Armstrong v.**

14    **Newsom, et al</u>; *Five Prisons Remedial Plan*; <u>Todd Ashker Settlement</u>**.

15 91. Def. M. Hernandez's actions, in retaliating against Pl. for and right after Pl. exercised Pl.'s

16    protected conduct of filing grievances/voicing oral complaints against Def. (for interfering with

17    Pl.'s court access and retaliatory conduct), were retaliatory adverse conduct/actions against Pl.

18    conducted within a few days after Pl. filed grievances/voiced oral complaints against Def. Def.

19    searched Pl.'s cell, departed from normal procedure, destroyed/confiscated crucial, essential

20    evidence documents/references for Pl.'s pending civil, criminal cases, other litigation, which Pl.

21    can never recover such evidence again. Def. withheld Pl.'s legal books until Pl. ran out of time to

22    respond to a court order deadline, and this after Pl. was threatened if Pl. accessed the law library

23    that the rest of Pl.'s property would be destroyed, that it could get worse if Pl. continued fighting

24    his cases with further cell searches and RVRs/disciplinary charges. As a result of Def.'s actions,

25    Pl. suffered damage in the form of a First Amdt. infringement that shocked/chilled Pl. from

26    accessing the courts, Pl. isolating himself to his cell, not coming out to shower or recreation yard,

27    law library, visits during Def.'s shifts. Pl. missed researching/replying by the court order

28    deadline for his civil case. Def.'s actions constituted retaliation and violated Pl.'s First Amdt.

   *OSUNA V. LUVIANO, ET AL*

1  rights, and **federal court orders arising from <u>Coleman v. Newsom, et al</u>; <u>Armstrong v.</u>**

2  **<u>Newsom, et al</u>;** *Five Prisons Remedial Plan*; <u>**Todd Ashker Settlement**</u>.

3  92. Def. E. Moreno's actions, in retaliating against Pl. for and right after Pl. exercised Pl.'s protected

4  conduct of filing grievances/voicing oral complaints against Def. (for interfering with Pl.'s court

5  access and retaliatory conduct), were retaliatory adverse conduct/actions against Pl. conducted

6  within a few days after Pl. filed grievances/voiced oral complaints against Def. Def. searched

7  Pl.'s cell, departed from normal procedure, destroyed/confiscated crucial, essential evidence

8  documents/references for Pl.'s pending civil, criminal cases, other litigation, which Pl. can never

9  recover such evidence again. Def. withheld Pl.'s legal books until Pl. ran out of time to respond

10  to a court order deadline, and this after Pl. was threatened if Pl. accessed the law library that the

11  rest of Pl.'s property would be destroyed, that it could get worse if Pl. continued fighting his

12  cases with further cell searches and RVRs/disciplinary charges. As a result of Def.'s actions, Pl.

13  suffered damage in the form of a First Amdt. infringement that shocked/chilled Pl. from

14  accessing the courts, Pl. isolating himself to his cell, not coming out to shower or recreation yard,

15  law library, visits during Def.'s shifts. Pl. missed researching/replying by the court order

16  deadline for his civil case. Def.'s actions constituted retaliation and violated Pl.'s First Amdt.

17  rights, and **federal court orders arising from <u>Coleman v. Newsom, et al</u>; <u>Armstrong v.</u>**

18  **<u>Newsom, et al</u>;** *Five Prisons Remedial Plan*; <u>**Todd Ashker Settlement**</u>.

19  93. Def. A. Encinas's actions, in retaliating against Pl. for and right after Pl. exercised Pl.'s protected

20  conduct of filing grievances/voicing oral complaints against Def. (for interfering with Pl.'s court

21  access and retaliatory conduct), were retaliatory adverse conduct/actions against Pl. conducted

22  after Pl. filed grievances/voiced oral complaints/litigation against Def. Def. permitted/allowed,

23  searched Pl.'s cell, departed from normal procedure, destroyed/confiscated crucial, essential

24  evidence documents/references for Pl.'s pending civil, criminal cases, other litigation, which Pl.

25  can never recover such evidence again. Def. withheld Pl.'s legal books until Pl. ran out of time to

26  respond to a court order deadline, and this after Pl. was threatened if Pl. accessed the law library

27  that the rest of Pl.'s property would be destroyed, that it could get worse if Pl. continued fighting

28  his cases, further cell searches and RVRs/disciplinary charges. As a result of Def.'s actions, Pl.

1    suffered damage in the form of a First Amdt. infringement that shocked/chilled Pl. from

2    accessing the courts, Pl. isolating himself to his cell, not coming out to shower or recreation yard,

3    law library, visits during Def.'s shifts. Pl. missed researching/replying by the court order

4    deadline for his civil case. Def.'s actions constituted retaliation and violated Pl.'s First Amdt.

5    rights, and **federal court orders arising from <u>Coleman v. Newsom, et al</u>; <u>Armstrong v.</u>**

6    **<u>Newsom, et al</u>; *Five Prisons Remedial Plan*; <u>Todd Ashker Settlement</u>.**

7    94. Def. J. Romero's actions, in retaliating against Pl. for and right after Pl. exercised Pl.'s protected

8    conduct of filing grievances/voicing oral complaints against Def., were retaliatory adverse

9    conduct/actions against Pl. within a few days after Pl. filed grievances/voiced oral complaints

10   against Def. Def. searched Pl.'s cell and departed from normal procedure and

11   destroyed/confiscated crucial, essential evidence documents, references for Pl.'s pending civil,

12   criminal cases, other litigation, which Pl. can never recover such evidence again. Def. interfered

13   with Pl.'s court mail, and then knowingly issued Pl. a false RVR. As a result of Def.'s actions,

14   Pl. suffered damages in the form Pl. being shocked/chilled from accessing the courts, and with

15   Pl. isolating himself to his cell, not coming out to shower or recreation yard, law library, visits

16   during Def.'s shifts. Pl. missed researching/replying by the order deadline for his civil case.

17   Def.'s actions constituted retaliation and violated Pl.'s First Amdt. rights, and **federal court**

18   **orders arising from <u>Coleman v. Newsom, et al</u>; <u>Armstrong v. Newsom, et al</u>; *Five Prisons***

19   ***Remedial Plan*; <u>Todd Ashker Settlement</u>.**

20   95. Def. A. Ferrel's actions, in retaliating against Pl. for and right after Pl. exercised Pl.'s protected

21   conduct of filing grievances/voicing oral complaints against Def. (for interfering with Pl.'s court

22   access and retaliatory conduct), were retaliatory adverse conduct/actions against Pl. conducted

23   within a few days after Pl. filed grievances/voiced oral complaints against Def. Def. searched

24   Pl.'s cell and departed from normal procedure, destroyed/ confiscated crucial, essential evidence

25   documents and references for Pl.'s pending civil, criminal cases, other litigation, which Pl. can

26   never recover such evidence again. Def. withheld Pl.'s legal books until Pl. ran out of time to

27   respond to a court order, and this after Pl. was threatened if Pl. accessed the law library that the

28   rest of Pl.'s property would be destroyed, that it could get worse if Pl. continued fighting his

1    cases, further cell searches and RVRs/disciplinary charges. As a result of Def.'s actions, Pl.

2    suffered damage in the form of a First Amdt. infringement that shocked/chilled Pl. from

3    accessing the courts, with Pl. isolating himself to his cell, not coming out to shower or recreation

4    yard, law library, visits during Def.'s shifts. Pl. missed researching/replying by the court deadline

5    for his civil case. Def.'s actions constituted retaliation and violated Pl.'s First Amdt. rights, and

6    **federal court orders arising from <u>Coleman v. Newsom, et al</u>; <u>Armstrong v. Newsom, et al</u>;**

7    *<u>Five Prisons Remedial Plan</u>; <u>Todd Ashker Settlement</u>*.

8    96. Def. J. Barrios's actions, in retaliating against Pl. for and right after Pl. exercised Pl.'s protected

9    conduct of filing grievances/voicing oral complaints against Def. (for interfering with Pl.'s court

10   access and retaliatory conduct), were retaliatory adverse conduct/actions against Pl. conducted

11   within a few days after Pl. filed grievances/voiced oral complaints against Def. Def. searched

12   Pl.'s cell, departed from normal procedure, destroyed/confiscated crucial, essential evidence

13   documents/references for Pl.'s pending civil, criminal cases, other litigation, which Pl. can never

14   recover such evidence again. Def. withheld Pl.'s legal books until Pl. ran out of time to respond

15   to a court order deadline, and this after Pl. was threatened if Pl. accessed the law library that the

16   rest of Pl.'s property would be destroyed, that it could get worse if Pl. continued fighting his

17   cases, for further cell searches and RVRs/disciplinary charges. As a result of Def.'s actions, Pl.

18   suffered damage in the form of a First Amdt. infringement that shocked/chilled Pl. from

19   accessing the courts, Pl. isolating himself to his cell, not coming out to shower or recreation yard,

20   law library, visits during Def.'s shifts. Pl. missed researching/replying by the court order

21   deadline for his civil case. Def.'s actions constituted retaliation and violated Pl.'s First Amdt.

22   rights, and **federal court orders arising from <u>Coleman v. Newsom, et al</u>; <u>Armstrong v.</u>**

23   **<u>Newsom, et al</u>;** *<u>Five Prisons Remedial Plan</u>; <u>Todd Ashker Settlement</u>*.

24   97. Def. J. Espinosa's actions, in retaliating against Pl. for and right after Pl. exercised Pl.'s

25   protected conduct of filing grievances/voicing oral complaints/litigation, were retaliatory adverse

26   actions, departing from policy in ordering/permitting and himself confiscating Pl.'s legal books

27   and then allowing/condoning destruction/confiscation of the legal evidence/documents that were

28   in between the pages of the books. Def.'s actions constituted retaliation and violated Pl.'s First

18                                           *OSUNA V. LUVIANO, ET AL*

105. Def. D. Burns' actions, in retaliating against Pl. for and right after Pl. filed grievances/voiced oral complaints against Def., Def. took retaliatory adverse action against Pl. when Def. was part of the process of handling Pl.'s property, had departed from normal procedure with the confiscating/destroying of Pl.'s evidence, legal properties, documents, references that were essential, crucial to Pl.'s civil, criminal cases. Def.'s actions constituted retaliation and violated Pl.'s First Amdt. rights, and **federal court orders of <u>Todd Ashker Settlement</u>**.

106. Def. J. Hernandez's actions, in retaliating against Pl. for and right after Pl. filed grievances/voiced oral complaints against Def., Def. took retaliating adverse action against Pl. when he was part of the process of handling Pl.'s property in R&R, departed from normal procedure with the confiscating/destroying of Pl.'s evidence, legal properties, documents, that were essential, crucial to Pl.'s civil, criminal cases. Def.'s actions constituted retaliation and violated Pl.'s First Amdt. rights, and **federal court orders of <u>Todd Ashker Settlement</u>**.

107. Def. S. Weaver's actions, in retaliating against Pl. for and right after Pl. filed grievances/voiced oral complaints against Def., Def. took retaliating adverse action against Pl. when he was part of the process of handling Pl.'s property and had departed from normal procedure with the confiscating/destroying of Pl.'s evidence, legal properties, documents, references that were essential, crucial to Pl.'s civil, criminal cases. Def.'s actions constituted retaliation and violated Pl.'s First Amdt. rights, and **federal court orders of <u>Todd Ashker Settlement</u>**.

108. Def. K. Field's actions, in retaliating against Pl. for and right after Pl. exercised his protected conduct of grievances/voicing oral complaints against her, Def. took adverse action against Pl. via allowing/permitting the confiscation, destruction of Pl.'s crucial, essential legal documents related to Pl.'s pending, contemplated cases, legal books, allowed/permitted Pl.'s loss of privileges and liberties in indeterminate SHU. Def.'s actions constituted retaliation, infringed on, violated Pl.'s First Amdt. rights, **and had violated <u>Todd Ashker Settlement</u>**.

109. Def. Luviano's actions, in taking retaliatory action against Pl. for and right after Pl. filed grievance and voiced complaints against Def. for telling inmates Pl. a rapist and for sexually harassing Pl., Def. took retaliatory adverse action by interfering with Pl.'s medical treatment/care by confiscating/destroying Pl.'s inhaler/other ADA emergency keep-on-person

1    medication. As a result of Def.'s actions, Pl. had an asthma attack without his

2    inhaler/medication. Def.'s actions demonstrated retaliation, violated Pl.'s First Amdt. rights.

3    110. Def. A. Ferrel's actions, in taking retaliatory action against Pl. for and right after Pl. filed

4    grievance and voiced complaints against Def., Def. took retaliatory adverse action by

5    interfering with Pl.'s medical treatment/care by confiscating/destroying Pl.'s inhaler/other

6    ADA emergency keep-on-person medication. As a result of Def.'s actions, Pl. had an asthma

7    attack without his inhaler/medication. Def.'s actions demonstrated retaliation and violated Pl.'s

8    First Amdt. rights.

9    111. Def. M. Hernandez actions, in taking retaliatory action against Pl. for and right after Pl. filed

10    grievance and voiced complaints against Def., Def. took retaliatory adverse action by

11    interfering with Pl.'s medical treatment/care by confiscating/destroying Pl.'s inhaler/other

12    ADA emergency keep-on-person medication. As a result of Def.'s actions, Pl. had an asthma

13    attack without his inhaler/medication. Def.'s actions demonstrated retaliation and violated Pl.'s

14    First Amdt. rights.

15    112. Def. J. Romero's actions, in taking retaliatory action against Pl. for and right after Pl. filed

16    grievance and voiced complaints against Def., Def. took retaliatory adverse action by

17    interfering with Pl.'s medical treatment/care by confiscating/destroying Pl.'s inhaler/other

18    ADA emergency keep-on-person medication. As a result of Def.'s actions, Pl. had an asthma

19    attack without his inhaler/medication. Def.'s actions demonstrated retaliation and violated Pl.'s

20    First Amdt. rights.

21    113. Def. Luviano's actions in taking retaliatory action against Pl. for filing grievances and voicing

22    complaints regarding the denial of medical treatment/care and inflammatory comments to

23    inmates towards Pl., Def. took retaliatory action by interfering with Pl.'s medical care by

24    refusing to put Pl. in a secure, safe location. Def. acknowledged Pl. injured himself and was a

25    danger and did not confiscate the cutting instrument—yet instead left Pl. in his cell with

26    everything and posted COs on Pl.'s door overnight until 08/02/2024. As a result of Def.'s

27    actions, Pl. suffered further/new injuries. Def.'s action demonstrated retaliation and violated

28    Pl.'s First Amdt. rights.

1  114. Def. Cormier's actions in taking retaliatory adverse actions against Pl. for protected conduct

2      for filing grievances/voicing complaints against her, Def. took retaliatory action when she

3      confiscated and destroyed crucial, essential documents that were essential and were his

4      pending legal action documentation to be e-filed in a civil matter. As a result of Def.'s actions,

5      infringed and offended Pl.'s First Amdt. rights, preventing Pl. to bring any claims under

6      conditions of confinement to the Eastern District. Def.'s actions demonstrated retaliation and

7      contributed to wrong doings and damages and violated Pl.'s First Amdt. rights.

8                    1ST AMDT. TO THE U.S. CONSTITUTION

9                    CLAIM TWO: RETALIATION; ACCESS TO COURTS

10 115. Def. C. Cormier's actions in taking retaliatory action against Pl. for/right after Pl. exercised his

11     protected conduct in filing grievances/voicing complaints against her, Def. took retaliatory

12     adverse action by denying Pl. access to law library to e-file a civil complaint for the First and

13     Eighth Amdts. conditions of confinement that Def. knew was an urgent matter and there was a

14     standing court order between the Court and CSP-COR. As a result of Def.'s actions, Pl. was

15     unable to file and seek relief under conditions of confinement with the Court. Def.'s actions

16     demonstrated retaliation and violated Pl.'s First Amdt. rights.

17 116. Def. D. Berlanga's actions in taking retaliatory action against Pl. for/right after Pl. exercised

18     his protected conduct in filing grievances/voicing complaints, Def. took retaliatory adverse

19     action by denying Pl. access to law library to e-file a civil complaint for the First and Eighth

20     Amdts. conditions of confinement that Def. knew was an urgent matter and there was a

21     standing court order between the Court and CSP-COR. As a result of Def.'s actions, Pl. was

22     unable to file and seek relief under conditions of confinement with the Court. Def.'s actions

23     demonstrated retaliation and violated Pl.'s First Amdt. rights.

24 117. Def. Espinosa's actions in taking retaliatory action against Pl. for/right after Pl. exercised his

25     protected conduct in filing grievances/voicing complaints against Def., Def. took retaliatory

26     adverse action by denying Pl. access to law library to e-file a civil complaint for the First and

27     Eighth Amdts. conditions of confinement that Def. knew was an urgent matter and there was a

28     standing court order between the Court and CSP-COR. As a result of Def.'s actions, Pl. was

                                        23                    *OSUNA V. LUVIANO, ET AL*

1  unable to file and seek relief under conditions of confinement with the Court. Def.'s actions

2  demonstrated retaliation and violated Pl.'s First Amdt. rights.

3  **14TH AMDT. TO THE U.S. CONSTITUTION**

4  **CLAIM THREE: PROCEDURAL DUE PROCESS; RIGHT TO CALL WITNESSES**

5  118. Def. A. Gonzales' actions in denying Pl. his right to have witness statements be a part of his

6  hearing had denied Pl.'s procedural right to have witness statements a part of the disciplinary

7  process, which statements were crucial to the defense of Pl. and the outcome of that disciplinary

8  hearing. Def.'s actions resulted in Pl. being found guilty with a loss of liberties, confinement to

9  segregation, loss of family visitation for 5 years, extended stay in segregated unit isolation, loss

10  of full privileges, violating Pl.'s Fourteenth Amdt., and was **in violation of the federal court**

11  **orders arising from the <u>Armstrong v. Newsom, et al</u>; <u>Coleman v. Newsom, et al</u>; the *Five***

12  ***Prisons Remedial Plan*; <u>Todd Ashker Settlement</u>.**

13  119. Def. A. Gonzales' actions in denying Pl. procedural due process, his right to be heard, when Pl.

14  requested to challenge the RVR for possession of a weapon through a federal court order and

15  grievance procedure, which allows inmates to file a grievance if they believe it is false and

16  retaliatory before the hearing has occurred under the ***Five Prisons Remedial Plan***; <u>**Armstrong,**</u>

17  <u>**v. Newsom, et al**</u>. As a result of this denial, Pl. suffered loss of liberties and privileges, loss of

18  yard, was confined to punitive segregation. Def.'s actions violated Pl.'s procedure due process

19  right to be heard guaranteed by the Fourteenth Amdt.

20  **H. PRAYER FOR RELIEF**

21  WHEREFORE, Pl. respectfully requests that the Court grant the following relief:

22  **A. Issue declaratory judgement statements.**

23  **B. Issue compensatory damages:**

24  a. For compensatory damages in an amount to be proven at Trial.

25  b. For all punitive damages in an amount appropriate to punish the Def. and make an example of

26  the Def. to the community.

27  c. For any additional general and or specific, consequential and or incidental damages in an

28  amount to be proven at trial.

*OSUNA V. LUVIANO, ET AL*

1    d.  For all nominal damages.

2    e.  For all interests, where/as permitted by law.

3    **C. Issue injunction orders to:**

4    f.  For an order to withdraw falsely/retaliatorily issued 24CM3734 (Kings County Superior Court;

5        filed 12/11/2024).

6    g.  For an order enjoining Defs. A. Luviano, E. Moreno, A. Encinas, J. Romero, A. Ferrel, J.

7        Burnes, D. Burns to be separated from Pl. and his properties and mail during the pendency of

8        this action and permanently thereafter for any Def. found guilty of retaliation.

9    h.  For an order of any findings of violations of federal court orders arising from <u>Armstrong v.</u>

10       <u>Newsom, et al</u>; *Five Prisons Remedial Plan,* <u>Coleman v. Newsom, et al</u>, ADA policies, <u>Todd</u>

11       <u>Ashker Settlement</u>, inter alia, be filed/reported to those respective Courts.

12   i.  For an order enjoining CDCR from conducting searches on Pl.'s cell, properties, inter alia

13       without Pl. being present during the pendency of this action and permanently thereafter.

14   j.  For an order restore any loss of privileges, liberties, credits, inter alia, arising from false

15       charges/RVRs during the pendency of this action; and permanently thereafter for any

16       privileges, liberties, credits, inter alia, found to have arisen from false charges/RVRs.

17   k.  For an order to return all crucial, essential legal documents that were confiscated and may still

18       be in Defs.' possession.

19   l.  For an order for CSP-COR to follow this Court's standing order and allow Pl. priority to e-file.

20   **D. GRANT any such other relief as may appear that Pl. is entitled.**

21                          **<u>DEMAND FOR JURY TRIAL</u>**

22   Pl. demands a trial by jury on all issues triable by jury.

23   Respectfully submitted on February 21, 2025,

24

25   *[signature]*

26

27   p.p. Jamie Osuna, CDCR # BD0868

28